# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| RUSTON LOUISIANA HOSPITAL COMPANY, LLC | CIVIL ACTION NO. 3:18-00881 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINCOLN HEALTH FOUNDATION, INC. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are two motions for summary judgment, to-wit, the Motion for

Summary [Doc. No. 24] filed by Plaintiff Ruston Louisiana Hospital Company, LLC,

("Ruston"), and the Motion for Summary Judgment [Doc. No. 26] filed by Defendant Lincoln

Health Foundation, Inc., ("the Foundation"). The motions are, in effect, cross motions for

summary judgment, both parties seeking judgment on all claims in this case. Both motions are

opposed [Doc. Nos. 30, 31], and each party has filed a reply brief in response to the other's

opposition brief [Doc. Nos. 32, 33]. For the following reasons, Ruston's motion [Doc. No. 24] is

DENIED and the Foundation's motion [Doc. No. 26] is GRANTED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Prior to February 1, 2007, Lincoln Health System, Inc., ("System") was the owner and

operator of Lincoln General Hospital and certain related health care facilities located in Ruston,

Louisiana ("the Hospital"). On February 1, 2007, System entered into an Asset Purchase

Agreement ("the Agreement") with Ruston whereby Ruston purchased certain assets utilized by

System in its operation of the Hospital. [See Asset Purchase Agreement, Doc. Nos. 25-2,3].   As

part of the Agreement, Ruston purchased most, but not all, of System's assets.  System took on

certain indemnification obligations through the Agreement, including indemnification for "any claim made by a third party with respect to the operation of the Hospital prior to the Closing Date." [*Id.*]. The Closing Date was April 1, 2017. Ruston and System further agreed that the Agreement inured to the benefit of and was binding upon the parties and their respective legal representatives, *successors*, and assigns. [*Id.*]

On July 25, 2017, more than ten years after the sale of the Hospital, Ruston received a notification from Centers for Medicare & Medicaid Services ("CMS") that an outlier reconciliation had been performed by CMS regarding charges submitted by System to Medicare from October 1, 2006 through March 31, 2007, a time period prior to the purchase by Ruston, as a result of which $703,562.00 was being assessed by CMS against Ruston. [Doc. No. 24-8]. This amount was then withheld by CMS from its ongoing payments to Ruston.

Ruston subsequently made demand on both System and the Foundation for reimbursement of the amount assessed to Ruston by CMS for System's pre-closing obligation. Ruston contends that the Foundation is liable on the basis that it is the "successor" of System. Neither System nor the Foundation have tendered any payment to Ruston to reimburse it for this assessment levied by CMS against System prior to the Agreement Closing Date.

Ruston then initiated this lawsuit against the Foundation. Ruston now seeks judgment as a matter of law in the amount of $703,562.00, plus reasonable attorney's fees and costs.

The Foundation, on the other hand, denies that it is the successor of System. The Foundation contends that it was merely a stockholder of a 60% interest in System, with the other stockholders being Willis-Knighton Health System, Inc., and Franciscan Missionaries of Our Lady, who have not been made parties to this suit; that it was not a party to the Agreement; and that it did not execute any written assumption of System's obligations. The Foundation

concludes that, as a stockholder, it is not personally liable for the obligations of System. The Foundation, therefore, seeks summary judgment dismissing Ruston's claims against it.

The matter is fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "shall [be] grant[ed] ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.*

**B.     Analysis**

Under Louisiana law, when a company acquires the assets of another company, it is not

obligated for the liability of the company from which the assets are acquired. *Russell v.*

*SunAmerica Securities, Inc*., 962 F.2d 1169, 1175 (5th Cir. 1992) citing *Mozingo v. Correct Mfg.*

*Corp*., 752 F.2d 168, 174 (5th Cir. 1985). There are four exceptions to this rule:

1)     When the successor expressly or impliedly agrees to assume
the liabilities of the predecessor;

2)     When the transaction may be considered a de facto merger;

3)     When the successor may be considered a 'mere
continuation' of the predecessor; or

4)     When the transaction was fraudulent.

*Id*. Ruston argues that the Foundation is liable as a successor of System under two separate theories

of liability: (1) assumption of liability, and (2) continuation.

**1.     Assumption of Liability**

Under Louisiana law, a person can assume the liability of another person by doing so in

writing by agreement.  LA. CIV. CODE. art. 1821.  Ruston contends that the Foundation expressly

assumed the liability of System through two (2) separate series of acts. First, the Foundation

assumed liability of System by writing to the Louisiana Attorney General in order to obtain

approval from the Attorney General for the sale of the Hospital and subsequently amending its

Articles of Organization. Secondly, it did so again in writing in its effort to secure the assignment

of a bequest which was made to System.

**a.     Assumption by Letter and Amendment**

Ruston asserts that, because the Hospital was a public service district hospital owned and

operated on a not-for-profit basis, the sale of the Hospital was contingent on obtaining approval

from the Louisiana Attorney General.  On March 30, 2007, the Attorney General sent System

and its counsel correspondence indicating that System's application for approval of the sale of

the Hospital was approved but that the approval was "conditioned upon the adoption and

implementation of the Amended and Restated Articles of Incorporation of Lincoln Health

Foundation. . .".  [Doc. No. 24-4].

On April 9, 2007, one week after the Closing Date, the Foundation Amended its Articles

of Incorporation.  In those Amended Articles, the Foundation stated as follows:

> The Corporation is organized and shall be operated exclusively to
> benefit and support Lincoln Health System, Inc. and the Lincoln
> Parish Police Jury by furthering the charitable, scientific, and
> educational purposes, within the meaning of Section 501(c)(3) of
> the future federal tax code, of Lincoln Health System, Inc. and the
> Lincoln Parish Police Jury. To the extent not inconsistent with such
> purpose, in the event Lincoln Health System, Inc. is liquidated or
> substantially all of the assets of Lincoln Health System, Inc. are sold,
> the purposes of Lincoln Health Foundation shall include managing
> and using the sale proceeds or liquidating distributions to improve
> health care and outcomes for resident of the area historically served
> by Lincoln Health System, Inc. d/b/a Lincoln General Hospital in
> accordance with Louisiana law applicable to the use of proceeds for
> the sale of non-profit hospitals.

[Doc. No. 24-5].

System was then dissolved on October 15, 2007, seven (7) months after agreeing that it

would indemnify Ruston for pre-closing claims and seven (7) months after the Foundation

amended its Articles of Organization, as required by the Louisiana Attorney General for approval

of the sale.

Foundation amended its Articles of Incorporation again in 2010. This time, the

Foundation acknowledged the sale and dissolution of System. Specifically, the Foundation's

Amended Articles include the following statement:

The Foundation was originally organized and operated exclusively to benefit and support Lincoln Health System, Inc. and the Lincoln Parish Police Jury by furthering the charitable, scientific, and educational purposes, within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 as amended (the "Code") or the corresponding section of any subsequent federal tax code, of Lincoln Health System, Inc. and the Lincoln Parish Police Jury. Effective April 1, 2007 Lincoln Health System, Inc. sold substantially all its assets and began the process of liquidation and distribution of all assets to its stockholders. Lincoln Health Foundation, as a stockholder, then became a health care conversion foundation pursuant to LA. R.S. 40:2115.11 et seq. As a health care conversion foundation, and pursuant to the approval granted Lincoln Health Foundation by the Louisiana Attorney General, the purpose of the Foundation shall include managing and using the sale proceeds or liquidating distributions to improve health care and outcomes for residents of the area historically served by Lincoln Health System, Inc. d/b/a Lincoln General Hospital in accordance with Louisiana law applicable to the use of proceeds from the sale of non-profit hospitals.

[Doc. No. 24-7].

Ruston asserts that by virtue of the above, the Foundation acknowledged System's dissolution, acknowledged that the sale of the Hospital was contingent on the Louisiana Attorney General's approval, and acknowledged that the Foundations purpose was to manage and use the proceeds of that sale. Ruston further asserts that both sets of Amended Articles referenced above constitute a writing wherein the Foundation assumed the liability of System, as permitted under art. 1821; and, that System and the Foundation knew at the time of the Agreement that System would likely dissolve following the Agreement and specifically provided for a contingency plan to ensure that the proceeds of the sale would be properly managed. Thus, the Foundation assumed System's liability as a successor entity by its own actions and by entering into the Amended articles, according to Ruston.

The Foundation responds that the Amended Articles are not an "agreement" (let alone an assumption) as contemplated by article 1821. There is only one party (Foundation) to the

Amended Articles, and an essential requirement for any "agreement" under Louisiana law is at least two parties. See, LA. CIV. CODE art. 1906 ("A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.").

The Foundation further asserts that its Amended Articles do not state that the Foundation assumes System's obligations. The language Ruston relies upon in its motion is as follows: "in the event Lincoln Health System, Inc, is liquidated or substantially all of the assets of Lincoln Health System, Inc. are sold, the purposes of Lincoln Health Foundation shall include managing and using the sales proceeds to improve health care and outcomes for residents of the area historically served by Lincoln Health System, Inc." [Doc. No. 24-5]. The Foundation contends this is not sufficient to constitute an assumption of liabilities because the Amended Articles do not even mention –let alone expressly assume –System's obligations. According to the Foundation, Louisiana jurisprudence interpreting article 1821 of the Civil Code emphatically hold that there must be an agreement whereby the Foundation expressly states, "the Foundation assumes System's obligations" for Ruston's assumption theory to survive.

The Court finds that the Amended Articles relied upon by Ruston simply do not say anything about assuming System's obligations and therefore fail to meet the requirements for an assumption established by article 1821. Although Ruston argues that "managing the sales proceeds" amounts to an assumption of System's obligations pursuant to the Agreement, the only sales proceeds that the Foundation managed were the *pro rata* distributions to the Foundation as a stockholder. The Foundation did not manage the sales proceeds distributed to Willis-Knighton or St. Francis, the two other stockholders of System.

Therefore, Ruston's argument that the Foundation assumed the obligations of System by writing to the Louisiana Attorney General in order to obtain approval from the Attorney General

for the sale of the Hospital and by subsequently amending its Articles of Organization has no merit.

### b.     Assumption by Sturgis correspondence

Ruston next asserts that the second instance wherein the Foundation assumed the liability of System, as its successor, is in connection with the assignment of a bequest to System. William Harold Sturgis, a wealthy and charitable Texan, left a considerable amount of money to several beneficiaries upon his death. In his Last Will and Testament ("the Will"), after several specific bequests, he gave the remainder of his estate to the Sturgis Charitable Trust ("the Trust").  The beneficiary of a 10% interest in the Trust was "Lincoln General Hospital, Ruston, Louisiana, for capital additions and improvements, medical equipment or treatment of indigent patients."  [Doc. No. 24-9]. In 2005, two years before Ruston bought System's assets, the Will was admitted to probate in Texas.

Ruston points to a series of communications between the Foundation and the Trust in support of its arguments. The first letter, dated November 4, 2005, is from the Foundation's attorney to one of the trustees of the Trust, and states that "Lincoln General Hospital is a trade name of Lincoln Health System, Inc., which is a Delaware not-for-profit corporation."  [Doc. No. 24-10]. He then went on to explain System was sixty percent (60%) owned by the Foundation and that six (6) of the ten (10) board members of System "constitute the board of Lincoln Health Foundation."  The letter indicated further that, according to both System and the Foundation, in the event of System's dissolution, the Foundation would be a "surviving entity" and both entities wanted to make sure that the Trust understood that the Foundation would be carrying on System's work so it would continue to receive the substantial annual distributions from the Trust. On November 1, 2005, both System and the Foundation signed resolutions requesting and

authorizing the transfer of the Trust income earmarked for System to the Foundation. [Doc. Nos. 24-11, 12].

On September 5, 2006, the attorney wrote to another trustee of the Trust, providing him the System and Foundation resolutions and stating that the resolutions authorized the Foundation "to be the beneficiary under the Sturgis Will in view of the fact that it is the local foundation that supports Lincoln General Hospital." [Doc. No. 24-13].

Ruston contends that after the APA closing date of April 1, 2007, the Foundation represented in writing on multiple occasions that it was in fact System's successor in order to secure the assignment of the bequest from the Sturgis Charitable Trust, which was excluded from the sale of the Hospital. On August 13, 2008, another attorney for the Foundation wrote the following in a letter to a trustee:

> One might interpret Paragraph 7.5 of the Will as requiring automatic forfeiture of a bequest in any instance where a beneficiary dissolves. We believe the better interpretation of Paragraph 7.5 is that forfeiture is required when the dissolution leaves no legal successor to the beneficiary able to utilize the funds for the specific purpose designated. That is not the case with respect to the dissolution of LHS. *The Foundation is the legal successor to LHS* by virtue of the assignment of the Sturgis Bequest from LHS. And, as explained in the second section of this letter below, the Foundation is able to utilize the Sturgis Bequest for the specific purpose designated. (emphasis added).

[Doc. No. 24-18]. Foundation's counsel additionally stated that if the trustee disagreed that the Foundation was System's legal successor, System would withdraw its certificate of dissolution and the Foundation and System would merge. [*Id*.]

The Foundation has received annual distributions from the Trust every year from 2008 to the present. [Doc. No. 24-20].

Ruston argues that the Foundation should not be allowed, when it has gone to great lengths to ensure that it be recognized as System's legal successor when that means it will continue to receive money from a third party, to now hide behind its "strawman" shareholder argument when that same successor status results in an assumption of liability.

The Foundation replies that Ruston ignores relevant Louisiana law and pulls isolated words, totally out of context, from several pieces of correspondence and some Foundation board minutes in an attempt to establish an assumption. For example, the Foundation states that Ruston offers up the Foundation attorney's term "surviving entity," used in his 2005 letter to the Trustee; however, Ruston ignores the fact that there was no Asset Purchase Agreement in 2005 and thus it would be impossible for the Foundation to assume System's obligations related to an Agreement that did not exist. Moreover, the Foundation argues that Ruston ignores the context of the letter, as it was discussing who should be the beneficiary of the Trust bequest—not whether the Foundation was assuming System's obligations.

The Foundation further assets that, in the 2005 letter, the Foundation's attorney was merely pointing out to the trustee that the Foundation would survive a sale or dissolution of System; therefore, it would be appropriate to name the Foundation as the beneficiary to ensure that Mr. Sturgis' charitable gift would continue in the event of a future sale or dissolution. Thus, this letter, written two years before the sale to Ruston, cannot furnish the basis of an assumption.

The Foundation further argues that it is significant to note that the Agreement specifically excluded the Sturgis bequest from the assets sold to Ruston, which does not constitute an assumption. The Agreement for the sale to Ruston was reached in April 2007, and at that time, the Will was being contested in Texas. That will contest was not resolved until November 2007. [Doc. No. 30-11]. Therefore, according to the Foundation, it was prudent to mention the Sturgis

bequest as an excluded asset in April to make certain that Ruston could not, under any

circumstances, make any claim to the Sturgis bequest, no matter how the will contest was

resolved.

The Court finds that there is a difference between who is the appropriate beneficiary to a

charitable bequest and who has assumed another's obligations.  Clearly, correspondence two

years before the sale cannot furnish the basis of an assumption. Further, whether the Foundation

is the successor to a bequest has little to do with whether the Foundation assumed System's

obligations.  All of the Sturgis correspondence was in reference to the issue of which entity was

the appropriate beneficiary of the Sturgis bequest.  There is no mention in any of the

correspondence that the Foundation was assuming System's obligations; that was never

discussed or considered.

Louisiana law requires a clear expression of the Foundation's intent to assume System's

obligations.  Ruston cannot point to anything in the Sturgis correspondence whereby the

Foundation agreed to assume System's obligations.  In the absence of such language, there is no

assumption.

## 2. Continuation

Alternatively, Ruston submits that the Foundation is a successor of System under

Louisiana law as it is a mere continuation of System.

There are eight (8) factors which are typically considered in determining if a successor is

a mere continuation of a predecessor. *Russell v. SunAmerica Securities, Inc.,* 962 F.2d at 1169, n.

2 (5th Cir. 1992) citing *Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 175 (5th Cir. 1985). These

factors are:

1) Retention of the same employees;

2) Retention of the same supervisory personnel;

3) Retention of the same production facility in the same physical location;

4) Production of the same product;

5) Retention of the same name;

6) Continuity of assets;

7) Continuity of general business operations; and

8) Whether the successor holds itself out as the continuation of the previous enterprise.

*Id*.

Ruston contends that at least four of these factors fall in favor of finding that the Foundation is System's successor: (1) the Foundation shared the same supervisory personnel; (2) there is a continuity of assets; (3) there is a continuity of general business operations; and, (4) the successor held itself out as the continuation of the previous enterprise.

With regard to the first factor, Ruston asserts that six (6) out of the ten (10) System Board Members were also Foundation Board Members; and that seven (7) of the eleven (11) Directors identified in System's Certificate of Dissolution were also Directors of the Foundation either at the time of System's dissolution or shortly thereafter. [Doc. No. 24-6, 10, 22]. Further, Shirley Reagan signed the dissolution on behalf of System, shortly before taking over as the Chairperson at the Foundation. [*Id*.]

Ruston further asserts that Shirley Reagan played a large and ongoing roll for both organizations, using her role at the Foundation in order to control the flow of funds from System to the Foundation. For example, according to the March 17, 2010, Minutes of the Foundation Board of Directors, Reagan reported to the Board that System had inadvertently paid the Foundation's annual insurance premium, which Ruston contends shows: (1) System and the

Foundation were commingling funds; (2) System was continuing to operate long after its dissolution; and (3) System and the Foundation were effectively controlled by the same officers and directors. [Doc. No. 24-23].

Later Reagan reported to the Foundation Board when and how much the Foundation would receive on March 31, 2010, from the System escrow account. She noted that the System Board members would adopt a resolution regarding the distribution. [*Id*.] According to Ruston, this report shows that the Chair of the Foundation was also acting on behalf of System and that she was directing funds from System to the Foundation. Reagan was, therefore, simultaneously directing both entities for years after System's purported dissolution, according to Ruston. [Doc. No. 24-23, 25, 28, 29, 30]

Ruston also states that the Foundation's Board Minutes reflect that the Foundation and System's common officers and directors were making decisions regarding System's Medicare debts that pre-dated System's dissolution and the Closing Date of the Agreement. [*Id*.]

Ruston contends that not only did the Foundation and System share board members, officers, and legal counsel, but the Foundation also effectively controlled the operation of System leading up to and following its dissolution. Ruston further contends that the Sturgis documentation discussed above shows that in addition to controlling System, the Foundation also actively sought possession of some of System's assets and has received yearly distributions from the Sturgis Trust after lobbying hard to be recognized by the Trust as System's legal successor. According to Ruston, the evidence shows that not only did the Foundation and System share supervisory personnel and not only did the Foundation effectively control System at the time of its dissolution and for years after that dissolution, but the Foundation also directed the flow of

assets from System to the Foundation, possibly to the detriment of the other shareholders of System.

The Foundation responds that Ruston, rather than the Foundation, is the successor of System. It contends that the "threshold requirement" for successor liability is that one company must have purchased all the assets of the other, citing *Monroe v. McDaniel*, 207 So.3d 1172, 1181 (La. App. 5 Cir. 2016) ("However, the threshold requirement to trigger successor liability under the 'continuation' exception is that one corporation must have purchased *all* the assets of the other;" *see also J.D. Fields & Co. v. Nottingham Construction Co., LLC,* 184 So.3d 99, 103 (La. App. 1 Cir. 11/9/15) ("A threshold requirement to trigger a determination of whether successor liability is applicable under the 'continuation' exception is that one corporation must have purchased all or substantially all the assets of another."

The Foundation contends that Ruston has not alleged or proved that the Foundation purchased any, much less all, of System's assets. Further, the Foundation was established in 1996 –roughly 11 years before the Agreement between Ruston and System was confected. Additionally, discovery (and even Ruston's Complaint itself) establishes that Ruston–not the Foundation –is the likely successor of LHSI. *See* Complaint [Doc. No. 1, Par. 9] (Where Ruston affirmatively alleges that Ruston "purchased all of the assets" owned by or used in the operation of System and the Hospital). Therefore, according to the Foundation, if Ruston bought all of System's assets and the Foundation bought none, then Ruston's Complaint not only fails to allege the key fact necessary to find that the Foundation is System's successor –it undermines the very conclusion it attempts to impose by essentially alleging that Ruston is System's successor.

The Court finds that Ruston has not satisfied its burden of proving there is a genuine issue of fact that the Foundation is a successor of System under Louisiana law as it is a mere

14

continuation of System.  Although there was some sharing of supervisory personnel, it was

Ruston that acquired the assets of System including the Hospital, and not the Foundation.  There

is nothing to show that there was a retention by the Foundation of the Hospital employees, that

there was a retention by the Foundation of the same production facility in the same physical

location, that there was production by the Foundation of the same product, that there was

retention by the Foundation of the same name, that there was a continuity of assets, or that there

was continuity of general business operations.

Thus, Ruston has not raised a genuine issue of fact as to whether the Foundation is

System's successor.

### 3.       Shareholder Protection

Finally, the Foundation argues that, inasmuch as it was a mere stockholder in System,

Ruston's claims jeopardize Louisiana's shareholder protection laws.  The Court agrees.   LA.

REV. STAT. 12:219(A) specifically addresses non-profit Louisiana corporations and states, "[a]

member of a corporation shall not be liable personally for any obligation of the corporation."

There is a strong, long-standing public policy that shareholders are not liable for the debts of the

corporation. See *Riggins v Dixie Shoring Company, Inc*., 590 So.2d 1164, 1168 (La. 1992) ("The

general rule that corporations are distinct legal entities, separate from the individuals who

comprise them, and that the shareholders are not liable for the debts of the corporation, is

statutory in origin and well supported by the jurisprudence.")

In *Carter v State of Louisiana, DOTD*, 46 So.3d 787, 791-792 (La. App. 2d Cir. 2010),

the Louisiana Second Circuit Court of Appeals stated:

> It is well settled that a corporation is a distinct legal entity, separate
> from the individuals who comprise it...Due to the beneficial role of
> the corporate concept, the limited liability attendant to corporate
> ownership should be disregarded only in exceptional circumstances.

(cites omitted) Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligation.

Likewise, here, there is no genuine issue of fact that the Foundation, as a stockholder of System, is not liable for the corporate obligation of System. Therefore, the Foundation is entitled to judgment as a matter of law dismissing Ruston's claims.

### III.    CONCLUSION

Ruston has failed to establish a genuine issue of fact with respect to the Foundation's status as a "successor" to System. Therefore, Ruston's Motion for Summary Judgment [Doc. No. 24] is DENIED.

Further, there is no genuine issue of fact that the Foundation, as a stockholder of System, is not liable for the corporate obligations of System. Therefore, the Foundation's Motion for Summary Judgment [Doc. No. 26] is GRANTED.

MONROE, LOUISIANA, this 30th day of December, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE